1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Leauma Ben Alefosio
Pro Se
P.O. Box 112
Pago Pago, AS 96799
684-782-2537 | 684-622-3657
leauma@yahoo.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Jun 28, 2024, 4:27 pm
Lucy H.Carrillo, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LEAUMA BEN ALEFOSIO,

      Plaintiff,

vs.

AMERICAN SAMOA GOVERNMENT

      Defendant(s).

CASE NUMBER:  **24-00281 WRP**

CIVIL COMPLAINT

NOW COMES Pro Se Plaintiff, Leauma Ben Alefosio, files this civil complaint against the above-referenced defendant and in support states as follows:

## I. COMPLAINT:

The Plaintiff brings this action to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII). Specifically, this complaint alleges that Defendant violated Title VII, 42 U.S.C. § 2000e-2 § and 2000e-3 §, by discriminating against an employee concerning his compensation, terms, conditions, or privileges of employment because of the employee's national origin, age, and gender. The complaint alleges retaliation discrimination, discrimination based on national origin and gender in violation of Title VII, a violation of ADEA for discrimination based on an individual's age, and a violation of FSLA for retaliating against an employee by terminating employment for complaining about an unlawful employment action. The federal question arises out of violation of Title VII of the Civil Rights Act which prohibits discrimination in employment based on an individual's race, color,

CIVIL COMPLAINT - 1

religion, sex, or national origin. It also arises out of violation of Title VII of the Civil Rights Act for retaliation discrimination and violation of ADEA based on an individual's age and for retaliating against an employee for complaining about an unlawful employment action in violation of FSLA provision *Title 29* §215 a (3). These federal claims arise out of the same operative facts as the state claims filed with this Court on April 26, 2024, under case number 24-00196-DKW-KJM. In that civil complaint, the plaintiff seeks remedy for violation of his property interest right to continued employment and procedural protections guaranteed under the 14th Amendment to the United States Constitution**.**

## II. STATEMENT OF JURISDICTION AND VENUE

This court has jurisdiction over actions brought under violation of the Title VII Civil Rights Act, ADEA, and FLSA under 42 U.S.C. § 2000e-2 § and 2000e-3 §, 42 U.S.C. §§ 2000e-5(a)-5(k), 2000e-6(b), 29 U.S.C. § 623 4(a)-(f), 29 U.S.C. §211, 29 U.S.C. §626 7(a)-(f), 42 U.S.C. § 1981, 28 U.S.C. §§ 1331, and 1343(a) and Title 42 §1983, Title 28 § 1346b, Title 42 U.S.C. §12117, §2000ff-6, Title 29 §§ 201-219, Title 29 §215(a) 3, Title 29 §201 et seq.

The venue is proper in this judicial district under 42 U.S.C. § 2000e- 5(a)-e-5(b),-e-5(f)(3), e-5(g)1, Title 28 § 1391 (b)3, Title 42 U.S.C. §2000ff-6, Title 29 §260, §216, §215(a) 3, Title 29 § 626 (7)a-f, Title 29 § 626 (4)a-f.

## II. PARTIES TO THE CASE

A. Plaintiff: is a resident of American Samoa and a former Investigator, Administrator, and Interpreter at the American Samoa Government's Office of the Public Defender. The Prose Plaintiff's address is P.O. Box 112, Pago Pago, AS 96799. Plaintiff is expressly authorized to bring this action under Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(a)-5(f)(1) and (3).

B. <u>Defendant:</u> Defendant American Samoa Government (ASG) is a governmental body and is specifically defined as a "State" for purposes of Title VII at 42 U.S.C. § 2000e(i). It is also a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b). For purposes of FSLA, the defendant ASG is also defined as a "State" under 29 U.S.C. § 203 (c), a "Person" under § 203 (a), and an "Employer" under 203 (d). The ASG employs approximately 6,500 employees who work in 34 departments, including the Office of the Public Defender. Each department/office is overseen by a director, who generally has authority over only the specific department/office.  The American Samoa Government has a "Hawaii State Office" located at <u>3049 Ualena Street, Honolulu, HI 96819</u>. This ASG "Hawaii Office" is headed by the Governor of American Samoa, Lemanu Mauga. The defendant is represented by Deputy Attorney General Roy Hall of the Office of the Attorney General at P.O. Box 7, Executive Office Building, 2nd Floor, Pago Pago, AS 96799. The defendant ASG may be served notice at either location.

III. BACKGROUND

The plaintiff is a 45-year-old male of American Samoan nationality. He worked for the American Samoa Government's Office of the Public Defender for nearly two years. His immediate supervisor, Michael White, is a White Caucasian male in his late 60s originally from the State of Georgia. Michael White took over as Director of the Office of the Public Defender's Office in 2019 when former Director Douglas Fiaui resigned. The plaintiff is the only Non-White employee in the department whose education and work experience are comparable to his White coworkers.  On May 1, 2020, Michael White decreased the plaintiff's salary without the plaintiff's knowledge and thereafter submitted the department's budget proposal on the same

CIVIL COMPLAINT - 3

date.

In early June 2020, the plaintiff discovered after retrieving records from the Budget Office that Michael White had adjusted his salary from $40,000.00 to about $30,000.00. Thereafter, the plaintiff approached Michael White as to why he adjusted his annual salary of $40,000.00 which matches his education and work experience background. The plaintiff complained that his annual salary was comparable to his level of education and work experience much like his White coworkers' salaries were equal to their level of education and work experience. The plaintiff also mentioned to White that it was a violation of the contract conversion policy as well as pertinent employment laws to alter an employee's salary without notice. This complaint is mentioned in the plaintiff's email correspondence sent to Michael White and former Governor Lolo.

On June 16, 2020, the plaintiff approached former Governor Lolo that his supervisor Michael White unfavorably adjusted his salary due to his national origin, Samoan. The plaintiff reiterated to Governor Lolo that his salary was comparable to his education and work experience much like his White coworkers. The plaintiff also mentioned that it was a violation of the contract conversion policy and pertinent state and federal employment laws. Upon receiving the plaintiff's complaint, Governor Lolo requested copies of the plaintiff's resume, credentials, and reference letters. Furthermore, Governor Lolo consulted with the Budget Office, the Attorney General's Office, and the Department of Human Resources. On June 24, 2020, upon reviewing the plaintiff's background Lolo converted the plaintiff's contract to career service and adjusted his salary from $40,000.00 to $45,000.00 as he felt the plaintiff was underpaid compared to his White coworkers.

In turn, Mr. White learns about the plaintiff's complaint and proceeds to take adverse

CIVIL COMPLAINT - 4

actions against the plaintiff by subjecting him to the following, among others: (1) creating a hostile environment for the plaintiff; (2) reduction in job responsibility; (3) reassigned to do menial work; (4) have duties and responsibilities reassigned to less qualified workers; (5) forced to share an office space with a female coworker without notice; and (6) threatened to get transferred. On April 27, 2021, Michael White secretly invited his Secretary Folole Fagaima to a "budget meeting" with Governor Lemanu. Folole is a relative of Governor Lemanu and Lieutenant Governor Talauega as well as the Chief of Staff Tauapa'i Laupola. On May 3, 2021, the plaintiff received his employment termination letter on his desk upon returning from his lunch break.

## VI. STATEMENT OF CLAIM

1. DISCRIMINATORY RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

The first claim against the defendant is discriminatory retaliation under Title VII. To establish a prima facie case, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered adverse employment actions; and (3) a causal link exists between the employment actions and the exercise of the protected activity. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997); *Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir.1995); *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 201 (3d Cir.1994); *Alston v. Rice, 825 F. Supp. 650, 650,* 657 (D.Del. 1993).

"Title VII generally prohibits discrimination in employment based on an individual's race, color, religion, sex, or national origin." *42 U.S.C.* § 2000e-2 and e-3. Title VII of the Civil Rights Act prohibits discrimination against an individual for engaging in a protected activity

CIVIL COMPLAINT - 5

based on Sex, National Origin, Marital Status, Race, Age, Religion, and Color. *Id*. Title VII forbids retaliation against an employee for complaining of prohibited employment discrimination, stating that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."42 U.S.C. § 2000e-3(a). Moreover, the First Amendment to the U.S. Constitution prohibits discrimination against an individual for engaging in protected speech.

## I.     1st Incident: Michael White altered Alefosio's salary without notice

On April 1, 2020, Michael White reduced the plaintiff's annual salary from $40,000.00 to roughly $30,000.00 annually without telling the plaintiff. Michael White knew that Governor Lolo's contract conversion policy would allow the plaintiff to keep his salary. The rationale of Governor Lolo's contract conversion policy was to retain highly qualified ASG employees, especially returning sons and daughters of American Samoa who went off-island on ASG scholarship and have gained valuable work experience like the plaintiff. Governor Lolo's conversion policy is similar to former Governors Togiola's and Tauese's conversion policy.

The plaintiff is the only Non-White employee with an advanced pertinent education and work experience in the department. The plaintiff is a former ASG scholarship recipient and holds an MS degree in Criminal Justice Administration and a BA in History and Political Science from Chaminade University. The plaintiff also matriculated as a law student at an ABA law school and a graduate student studying Forensic Science. Further, the plaintiff has over 15 years of combined work-related experiences working off-island as a Probation Officer for the Hawaii State Judiciary, an Investigator, and a Probation Officer in Colorado Springs. The plaintiff also worked for the University of Hawaii's Asian Pacific Islander Prevention Center in Honolulu as a

CIVIL COMPLAINT - 6

Social Science Research Associate where he was recruited by Criminologist Dr. Mark Yee (founder of the Criminal Justice program at Chaminade University). The plaintiff was also considered to work for the FBI and the Drug Enforcement Agency in his younger days. Moreover, in 2003, the plaintiff was the youngest to ever teach at the local American Samoa Community College at age 24. He taught criminal justice for three years at ASCC. In addition, the plaintiff is highly recommended by his former local and out-of-state employers.

Surely, the plaintiff was worth more than $40,000.00 annually.  Upon reviewing the plaintiff's credentials on June 24, 2020, Governor Lolo converted the plaintiff's contract to career service and raised his salary from $40,000.00 to $45,000.00. Lolo told the plaintiff "You are exactly what that department needs."

But that's not how White sees the plaintiff. To White, even with that much education and work experience, the plaintiff is just like any other Samoan, unworthy of a high-paying salary, a "less-than." On May 23, 2021, Alefosio called former Public Defender's Office worker Suisala to find out why Michael White had fired him in late 2019. Suisala started crying over the phone when asked. He said, "Michael White is a racist person." He also said that "he was conniving, that Michael White thinks less of Samoans and that he's superior to Samoans." The plaintiff recalls one day when he asked Michael White if he knew about the first Samoan who got admitted to Harvard Law School. Mike replied, "he probably got in because of his status as a minority thanks to affirmative action."

## II.     Second Incident: Plaintiff complains to Michael White for unfavorable salary adjustment due to his national origin as an American Samoan

In early June 2020, the plaintiff discovered after retrieving records from the Budget Office that his supervisor Michael White had altered his salary without notice. Thereafter, the

CIVIL COMPLAINT - 7

plaintiff approached White as to why he reduced his salary because he felt his pay of $40,000.00 annual salary was comparable to his education and work experience much like his White co-workers. The plaintiff also followed with an email to White comparing his salary to his White coworkers based on education and work experience. Even with a salary of $40,000.00 the plaintiff's White coworkers' salaries were higher than his. Further, the plaintiff informed Michael White that it was a violation of the contract conversion policy. The plaintiff's complaint to his supervisor is a protected activity under Title VII. After several failed attempts, the plaintiff then approached Governor Lolo.

**III.    Third Incident: Plaintiff complained to Governor Lolo as he felt White unfavorably adjusted his salary due to his national origin as Samoan**

On June 16, 2020, the plaintiff approached Governor Lolo and reiterated that White had unfavorably reduced his salary due to his national origin as being Samoan. This is confirmed in the plaintiff's email to Governor Lolo on June 16, 2020, at 1:15 am.  The plaintiff mentioned in his email to Governor Lolo that "the pay reduction was utterly disrespectful and also offensive and unfair." The plaintiff compared his salary to that of his White coworkers including Michael White based on his education and work experience. Further, the plaintiff informed Governor Lolo that it is a violation of the contract conversion policy which allows for straight conversion of pay as well as contrary to pertinent local and federal employment laws.

Alefosio's complaint to Michael White and Governor Lolo about the unfavorable pay adjustment due to his national origin of Samoan is a protected speech under the 1st Amendment to the US Constitution. It is also a protected activity under the Title VII Civil Rights Act for discrimination based on color, race, religion, national origin, sex, and age.  On September 9, 2020, Michael White signed the plaintiff's conversion paperwork. After he signed the

CIVIL COMPLAINT - 8

paperwork, Mike said to Alefosio "I wished you had approached me first." The plaintiff reminded Michael White that he had approached him several times.

IV.    **4th Incident: Having learned of Alefosio's complaint to former Governor Lolo Michael White retaliated by subjecting Alefosio to numerous employment adverse actions**

Michael White subjected Alefosio to the following adverse actions:  (1) reduction in job responsibility; (2) reassigned to do menial or degrading work; (3) forced to share an office space with another staff without notice; (4) suffered harassment or humiliation by the employer calculated to encourage resignation; (5) threatened to get transferred; (6) have duties and responsibilities reassigned to a less qualified staff; (7) employer withheld information and tools necessary to perform job duties and responsibilities; (8) not included in Fono confirmation hearing of Michael White and other meetings; (9) employer failure to acknowledge several requests to establish structure in workplace created hostile environment; (10) avoided suggestions to have staff meeting; (11) employer declined petitioner's suggestions to improve servicing clients; (12) experienced unlawful reduction of hours; (13) unfair treatment relative to other staff; (14) employer enlisted other staff in his effort to terminate petitioner's employment using petitioner's high salary as a motive to cause injury; (15) coerced petitioner to ask clients to take offers from the AG's office without investigation; (16); subject to verbal insults causing humiliation; (17) employer employed personal attack on petitioner's character; (18) employer redirected clients to see other less qualified staff; (19) and Mike White secretly met with Governor Lemanu and using Folole Fagaima's influence (known avid supporter and relative of Lemanu and Talauega's campaign) to garner Governor Lemanu's support for termination; and

CIVIL COMPLAINT - 9

(20) had role downplayed to only "Translator" and ignoring petitioner's other roles as investigator and administrator indicated in Micheal White's inter-agency transfer letter.

### III. 5th Incident: White reminded Alefosio when he approached Governor Lolo

In late October 2020, when Alefosio applied for a home loan at the Development Bank of American Samoa the loan officer informed him that his employee 303 Form was rather strange because she had seen other forms of ASG employees who recently had their contracts converted to career service without a probationary period. That prompted the plaintiff to investigate this classification issue that perhaps other ASG employees had their contracts converted straight to career service without serving a probationary period, mainly those who supported the Lemanu and Talauega's political team. At this point, Lolo's Administration powers had slowly diminished and those working in government who advocated for Lemanu's political team were starting to assert their influence. From that point forward, the plaintiff suspected Michael White would try to employ a tactic to tamper with his employment.

In early March 2021, the plaintiff approached Director Michel White regarding the 2022 FY budget proposal for fear of losing his job considering he was serving a 1-year probationary period. And especially because Michael White was still upset when the plaintiff had complained to the previous Governor in 2020. Director White informed the plaintiff that "he'll let him know when the budget is submitted and if there were any changes." Then he said something that concerned the petitioner, "Remember that stunt you pulled when you approached Lolo last year?"

### V.     Fourth Incident: Michael White used the momentum of the new administration under Governor Lemanu's resentment against former Governor Lolo's conversion policy to get back at Alefosio

CIVIL COMPLAINT - 10

When Lemanu's administration took office in 2021, they immediately implemented the so-called "roll-back policy" to counter former Governor Lolo's contract conversion policy. It was all a political ploy. Governor Lemanu would later rescind his "roll-back" policy. However, Michael White used the momentum of the Lemanu Administration against former Governor Lolo's contract conversion policy, even though Lemanu would later endorse it, to get back at Alefosio for complaining to Governor Lolo in 2020. On April 26, 2021, the plaintiff asked to accompany Director Mike White to his FY 2022 budget meeting with Governor Lemanu. Director Michael White lied and said he was going alone.

On April 27, 2021, the plaintiff discovered that Michael White's secretary Folole Fagaima had accompanied White to the "budget meeting." Folole admitted telling Governor Lemanu and the Budget Office that the petitioner was overpaid for just being an Interpreter, which was a blatant lie. Folole is a relative of Governor Lemanu and Lieutenant Governor Talauega and also Chief of Staff Tauapa'i Laupola. Folole also served on Lemanu's political team's campaign. Michael White knew Folole was an avid supporter of Lemanu because she often wore clothing displaying Lemanu's political team logo in the office. Michael White also knew Folole resented Alefosio's high salary because Folole had conveyed this to him. That was enough motive for Folole to comply and rally other co-workers against Alefosio. And that also created a hostile environment for Alefosio. At one point, when Alefosio returned from lunch break, he found debris of wood shingles left on his desk from a work order to repair the Office ceiling initiated by Folole.

When Alefosio approached Michael White after confronting Folole about the "budget meeting" he reminded the plaintiff again, "Remember that stunt you pulled seeing Lolo last year?" Michael White used Folole's political and familial connection with Governor Lemanu and

CIVIL COMPLAINT - 11

her resentment toward the plaintiff's high salary in his favor to get back at Alefosio. On May 3, 2021, the plaintiff received a termination letter of his employment left on his desk upon returning from lunch break.  The letter is dated April 30, 2021, approximately two days after the "budget meeting." Michael White and Folole are not authorized personnel to make decisions to terminate an employee's employment.

Consequently, Michael White retaliated against the plaintiff for engaging in a protected activity for complaining to former Governor Lolo Moliga due to an unfavorable reduction of his salary based on his national origin as Samoan which was a violation under Title VII of the Civil Rights Act. Michael White initially retaliated by subjecting the plaintiff to numerous adverse employment actions and subsequently conspired with the DHR to terminate the plaintiff's employment. Furthermore, the plaintiff's complaint to Governor Lolo in 2020 about the unfavorable pay adjustment is a protected speech under the 1st Amendment of the US Constitution.

2.  DISCRIMINATION BASED ON NATIONAL ORIGIN

a.  National Origin

The second claim under Title VII is discrimination based on national origin. The plaintiff is the second native of American Samoa male that Michael White has fired within a year. The first one was a worker named Junior Suisala. On May 23, 2021, Alefosio called Suisala to find out why Michael White had fired him in 2019. Suisala started crying over the phone when asked. He said, "Michael White is a racist person." He also said that "he was conniving that Michael White thinks less of Samoans and that he's superior to Samoans." Suisala told the plaintiff that he suffered a stroke after Michael White terminated his employment because he underwent a lot of stress."

CIVIL COMPLAINT - 12

Alefosio can attest to Suisala's assertion that White is a "conniving" and "racist" person as true. For instance, Michael White altered Alefosio's salary without telling him. White also lied when Alefosio asked in early April 2020 if he had submitted the budget proposal and he said "Not yet." On August 18, 2021, the defendant ASG's attorney filed an Affidavit of Michael White at the Office of the Administrative Law Judge in opposition to the plaintiff's Motion for Summary Judgment. White mentioned in his affidavit that he had not submitted the budget proposal in April 2020. Unbeknownst to White, Alefosio had already retrieved a copy of the budget proposal from the Budget Office submitted on April 1, 2020. White also lied in his affidavit that it was Alefosio who wrote the inter-agency transfer letter. In his "Transfer Request" letter dated April 8, 2028, which the DHR concealed for two years, White also lied that Alefosio received a significant pay raise from $28,000.00 to $45,000.00 after the conversion.

Further, on April 27, 2021, Alefosio asked White if he needed company to the "budget meeting" with Governor Lemanu since he was also an Administrator. White said he was going alone. On April 28, 2021, Alefosio discovered that White had invited his secretary Secretary Folole Fagaima to the alleged "budget meeting." Michael White also recruited the help of another Public Defender Attorney named Anderson against Alefosio. Anderson switched up the agreement that an inmate had already agreed on with the government to injure Alefosio's reputation. The inmate's sister approached Alefosio outside the court's parking lot before the hearing and asked why "Anderson" switched her brother's agreement. She said her brother didn't need help translating to know that Anderson had switched the agreement with the government.

Michael White's excuse for altering the plaintiff's salary was that there were not enough funds. In 2022, Michael White was sentenced to 1-year probation by High Court Judge Patea for contempt of court for not fulfilling his duty as an Officer of the Court. During the sentencing

hearing, Michael White lied and said he needed help. The local paper *Samoa News* reported

Michael White cried in court. However, Judge Patea saw right through his theatrics. When

Alefosio worked for the Office of the Public Defender, White denied Alefosio's attempts to get

more funding from the Governor's Office and the Criminal Justice Planning Agency. In 2022,

when the *Fono* (Legislature) members asked Director Faiai of the Office of the Criminal Justice

Planning Agency why there was a lack of attorneys at the Office of the Public Defender, Faiai

said Michael White had never requested funds from their office to hire more help but there were

funds available. White also intentionally neglected to submit a request to the DHR to hire more

attorneys. When the plaintiff approached Governor Lolo in 2020, Lolo talked of White's

insubordination since he became Director of the Public Defender's Office in 2019. According to

the plaintiff, White would also make inappropriate comments to Judges. White would say things

like "the PD Office would like to "tender" this document to the Court" when addressing a

"feminine" male Samoan Judge.

There were three other White male attorneys in the Office, two of them from the State of

Georgia where Michael White is originally from. Governor Lemanu's former attorney Jason

Mitchell is also from Georgia. Rumor has it that it was Michael White who invited Mitchell to

move to American Samoa. Alefosio recalls one time in Court when he asked White what

attorney Charles Ala'ilima, who is of Samoan descent was doing in court that day, he said,

"Who, the White guy?" Charles was distinguishable from among a crowd of Samoan inmates

awaiting their court hearing as he was wearing his courtroom attire. Mike detached the only

positive thing about what he saw in the crowd and associated it with a White person. White also

told Alefosio that he had developed a friendship with Chief Justice Michael Kruse who looks

White but is also of Samoan descent. As mentioned earlier, Michael White only attributes

CIVIL COMPLAINT - 14

"superiority, status, prestige" to White people. The Clerk of the High Court is also White. Alefosio noticed that when he filed his Writ of Mandamus and Interlocutory Appeal, the Office Manager named "Christel" would consult with the Clerk of the High Court before signing off on the documents. Strangely enough, Alefosio's case was referred to Judge Kruse.

Nowadays discrimination against a person's national origin or race is not as apparent as in the past. But when deciphering a person's demeanor, actions or inactions, commentary, behavior, attitude, etc. it becomes very clear. The plaintiff has known Michael White for approximately 2 years of working together. About ninety 90% percent of Alefosio's time is spent working closely with Michael White when he worked with the Office of the Public Defender. Their work routine consists of appearing in Court together daily. They also travel together in the department's vehicle to attend Court hearings. Thus, they spend a lot of time engaging in conversation during their travels or breaks. Alefosio recalls mentioning to White about the first Samoan who got admitted to Harvard Law School while traveling back to the office. White responded, "he probably got in because of his status as a minority due to affirmative action." And for good measure, White inserted "I didn't study for the bar exam; I just took it and passed." "It comes naturally to me."  In one of their travels to the Correctional Facility in Tafuna to see inmates around Flag Day time commemorating American Samoa's relationship and the US with cultural dances and ceremonies, White said, "This is such a waste of time." He said it with a disgusted look on his face. Employer actions or remarks that reflect a discriminatory attitude, comments that demonstrate a discriminatory animus in the decisional process, or comments made by individuals closely involved in employment decisions may all constitute direct evidence of discrimination. See King v. United States, 553 F.3d 1156, 1161 (8th Cir. 2009).

Alefosio describes his working relationship with Michael White as like that of a "Slave

CIVIL COMPLAINT - 15

Master" and a "Slave" or a "property."  Michael White's way of manipulating is by controlling, being discreet, and creating confusion. When the plaintiff complained to former Governor Lolo in 2020, it went against Michael White's innate beliefs. White felt the plaintiff had no right to do so, that the plaintiff was beneath him. To White, Alefosio's salary increase meant Alefosio was in the same category as him the "Slave Master" and his White attorney colleagues. He felt that there has to be a separation in terms of income, knowledge, prestige, connections, etc. to make himself and others like him feel superior. At one point, Alefosio asked Michael White if he needed help with drafting a pleading to be filed in Court. White replied, "You wouldn't know anything about this." On March 31, 2021, when Alefosio suggested an Investigator's perspective on a case they had worked on, Michael White threatened to transfer Alefosio and said, "Do what you were hired to do, "interpret." It meant the plaintiff was not "smart enough" to give such suggestions. But what Alefosio had suggested was exactly how it transpired.

Further, as a former law student, Alefosio recalls asking Micheal White to get access to Lexis and Westlaw to help out with the legal research. Mike responded with "What do you know about those search engine programs?" White looked surprised and disappointed when Alefosio asked as if he did not expect Alefosio to know of such information and was disappointed that Alefosio did. According to Alefosio, this was reminiscent of the past where the "Slave Master" would deny the "Slave" knowledge and opportunity for growth. This is also echoed in the former PD worker Suisala's admission on May 23, 2021. Suilala told Alefosio that Michael White was upset when former Public Defender Director Douglas Fiaui sent him to California for training. Upon returning from California Suisala said he became more active and vocal excited to showcase his newfound knowledge. And that irritated Michael White. Suisala said Michael White told him that when Douglas left and he became Director, he would terminate Suisala's

CIVIL COMPLAINT - 16

employment, and sure enough he did.

When Alefosio approached former Governor Lolo in 2020, he said to the plaintiff, "You are exactly what that department needs." But even with that much education and experience, White would never accept the fact that Alefosio is deserving of the salary he received because of his national origin. The main reason why Michael White altered the plaintiff's salary was due to his National Origin of Samoan. The plaintiff had sufficient work and education background to garner a high salary. The fact that the plaintiff complained to Governor Lolo about his salary adjustment and got away with it only makes White that much more furious which resulted in him subjecting the plaintiff to numerous adverse actions and subsequently colluding with the DHR to terminate the plaintiff's employment.

b.   Age Discrimination

The third claim is Age Discrimination under ADEA. In one of their conversations at work, White told Alefosio that "he's too old and looked old." "That he needed to shave his beard." At the time, Alefosio was 43 years of age. Alefosio would later find out that Michael White had allowed a younger female about half Alefosio's age named "Mia" whom White had recently hired to move into Alefosio's office without notice. Mia was hired to work as a receptionist with no pertinent work experience or education. White would later allow Mia to take over all of Alefosio's duties and responsibilities despite her lack of education and experience. Alefosio had written an email to Michael White about his concern that Mia and the other younger female with the last name "White" were taking over his duties and responsibilities.

White could tolerate "Mia" and the other new female receptionist "Nikki" mainly because they were cheaply hired and did not pose a threat either. Their salaries matched their education and work experience. Because they were younger "females" and lacked pertinent

education and work experience, they were easily manipulated which also allowed Michael White to make sexual advances toward them. Mia is of Tongan descent and Nikki is originally from Western Samoa. Both females are about half Alefosio's age.

c.   Gender Discrimination

The fourth claim is gender discrimination under Title VII. White has an affinity for younger girls. Alefosio remembers White inappropriately embracing a younger female defendant in Court by groping her buttocks area and tightly hugging her. Alefosio also noticed that White tends to aggressively and diligently argue for female defendants in Court more so than males. There was no question the plaintiff was treated differently from his female coworkers "Mia," "Nikki" and "Folole." For instance, the plaintiff was excluded from Michael White's *Fono* legislative confirmation hearing in 2021. White also kept a close eye on Alefosio, closely tracking his every move trying to find fault in Alefosio while he let the other females freely roam in and out of the office as they please. Former PD Worker Suisala told Alefosio that Michael White did the same thing to him by tracking his every move. Michael White also convinced Folole to unlawfully deduct the plaintiff's work hours. Alefosio and Suisala are both males from American Samoa with pertinent work experience and educational background. Both were also fired by Michael White within a year apart.

d.   Violation of FSLA

Under FSLA § 215 (a)(3), it is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding. An employer's knowledge that an employee might be covered by the FSLA, and failure to further inquire into the status of that

employee is sufficient to establish the employer's lack of good faith. See 29 C.F.R. § 790.15; see also Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir. 1995). FLSA 216 (b) explicitly affords aggrieved employees comprehensive redress, including but not limited to back wages, attorney fees, costs, and liquidated damages.

Here, in June 2020, the plaintiff complained to former Governor Lolo that Michael White had unfavorably altered his salary without notice. The plaintiff also informed Governor Lolo that it was contrary to the contract conversion policy and pertinent employment laws. The plaintiff also informed Governor Lolo that his salary matched his education and work experience background much like his White coworkers' salaries were comparable to their work and education background. Upon learning of the plaintiff's complaint, Micheal White subjected the plaintiff to various adverse actions including threatening to get transferred and limiting his job responsibilities. Michael White reminded the plaintiff twice about approaching former Governor Lolo in 2020. The first time was in early April 2021. The second time was April 28, 2021, after the "budget meeting" with Governor Lemanu. Michael White informed the plaintiff, "Remember that stunt you pulled when you approached Lolo in 2020" and proceeded to lie to the plaintiff not to worry about his job. On May 3, 2021, the plaintiff found his termination letter on his desk upon returning from his lunch break.

Furthermore, the reason stated in the termination letter was "unsatisfactory performance" and yet there was no performance evaluation, letters of reprimand, or warning as required by policy in Alefosio's DHR personnel file to corroborate the reason for termination. The recommendation letter which the DHR concealed for two years was to "transfer" not to "terminate" Alefosio's employment.

VII. EEOC TIMELINESS OF FILING

CIVIL COMPLAINT - 19

A. Failed attempts to get help from the local EEOC Office in American Samoa

The plaintiff received his termination letter on May 3, 2021. His last day of employment was May 7, 2021. Since his employment termination, the plaintiff has attempted to contact the Hawaii EEOC office as indicated in his email correspondence on Wednesday, August 4, 2021. (**See Exhibit 1**). The plaintiff initially approached the local ASG EEOC Officer named "Eseta Iosefa Kruse." However, she had failed to provide any valuable information to help the plaintiff file his discrimination claim. Like Michael White's secretary "Folole," "Eseta" supported Lemanu's political team for Governor and Lieutenant Governor during the 2000 election. In January 2021, the local EEOC office in American Samoa was transferred from the DHR to directly under the Office of the Governor of American Samoa. This was another reason the local EEOC Office was reluctant to help the plaintiff because Governor Lemanu was implicated in the case. And mainly because Alefosio hadn't shown support for Lemanu's political team. The plaintiff mentioned in his letter sent to DHR Director Lynn Pulou Ala'imalo on May 6, 2021, that the defendant violated Title VII of the Civil Rights Act by terminating his employment because he had engaged in a "protected activity" when he complained to former Governor Lolo in 2020 that Michael White had altered his salary without notice and that he was deserving of the salary due to his education and work experience background. The plaintiff sent two letters to the DHR before he filed his complaint at the Office of the Administrative Law Judge. It was the duty of the DHR Director to investigate such allegations but she failed to do so. Instead of referring the plaintiff to the local EEOC Office to see "Eseta" to file his discrimination claim, "Lynn" attempted to bribe the plaintiff by offering him a job to transfer to the DHR Office. (**See Exhibit 2**)

To make matters worse for the plaintiff, there are no notices in the Public Defender's

CIVIL COMPLAINT - 20

Office or within the ASG Executive Office Building located in Utulei describing the Federal laws prohibiting job discrimination based on race, color, sex (including pregnancy and related conditions, sexual orientation, or gender identity), national origin, religion, age (40 and older), equal pay, disability or genetic information (including family medical history or genetic tests or services), and retaliation for filing a charge, reasonably opposing discrimination or participating in a discrimination lawsuit, investigation, or proceeding. After failed attempts to get help from the local EEOC Office, the plaintiff approached former DHR Chief Personnel Officer named "Irene Uhrle" in August 2021 and she provided what the local EEOC office failed to do. She provided information to contact "Raymond Griffin" at the EEOC Office in Hawaii, via his email address. Before that, the plaintiff had been trying to file an EEOC claim online but was unsuccessful. Irene Uhrle was also wrongfully terminated by the Lemanu Administration in 2021.

   B.  The plaintiff was misled by the Hawaii EEOC

   Title VII actions are subject to equitable tolling when (1) the plaintiff timely filed suit in the wrong forum; (2) the defendant intentionally concealed the facts giving rise to the lawsuit; (3) the EEOC misleads the plaintiff about his rights; and (4) "a plaintiff has actively pursued judicial remedies but filed a defective pleading." *Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999)). The Supreme Court has suggested in *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S. Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), that courts may properly allow tolling where "a claimant has received inadequate notice, …[omitted]. . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." The tolling power is to be exercised in extraordinary circumstances. *Mondy v. Secretary of the Army,* 845 F.2d 1051,

CIVIL COMPLAINT - 21

1057 (D.C. Cir. 1988). "Equitable tolling prevents the running of a statute of limitations against the plaintiff who is unaware that he has a cause of action because of the defendant's fraudulent acts or concealment." *Bennett v. United States Lines,* 64 F.3d 62 and 66 (2d Cir.1995).

Equitable estoppel prevents a defendant from asserting the statute of limitations as a defense where "the plaintiff knew of the existence of the cause of action but the defendant's conduct caused the plaintiff to delay the bringing of the lawsuit." *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) (quoting *Cerbone,* 768 F.2d at 50). The doctrine "has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that he didn't need to commence litigation." *Cerbone,* 768 F.2d at 50. *See also Buttry,* 68 F.3d at 1494; *Dillman,* 784 F.2d at 60 to 61; *Seedman v. Alexander's, Inc.,* 683 F. Supp. 924, 926 (S.D.N.Y.1987).

"Equitable modification is appropriate when the EEOC misleads a complainant about the nature of his or her rights under Title VII or the ADEA. Other district courts have recognized the potential application for equitable considerations springing from misleading conduct by the EEOC although refusing to apply them under given circumstances. *See, e.g. Kent v. AVCO Corp.,* 815 F. Supp. at 70 to 71 (D.Conn.1992); *Osei-Bonsu v. Federal Home Loan Bank of New York,* 726 F. Supp. 95 at 98 to 99 (S.D.N.Y.1989); *Spira v. Ethical Culture Sch., 888 F. Supp. 601* at 602 (S.D.N.Y.1995); *Horne v. Cub Foods,* 93 C 3097, 1995 WL 319629, *3 (N.D.Ill., May 25, 1995).

One of the three situations where a charge not alleged in the EEOC charge is considered "reasonably related" is where the "claims not raised in the charge would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."' *Butts v. New York Dep't of Hous, Preservation & Dev., 990 F. 2d 1397, 1401*

(2d Cir. 1993). The other two situations are, first, a claim of retaliation subsequent to and based on the filing of the EEOC charge, and second, where the conduct involves "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.*

It is well-settled that a plaintiff may sue in federal court under Title VII after exhausting administrative remedies by filing a timely complaint with the EEOC and obtaining a right-to-sue letter. *See Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 69* (2d Cir, 2006). Exhaustion only occurs if a plaintiff's "Title VII claims ... either are included in an EEOC charge or are based on conduct after the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. New York Dep't of Hous, Preservation & Dev., 990 F. 2d 1397, 1401* (2d Cir. 1993). "[T]he purpose of the exhaustion requirement ... is to allow the administrative agency to investigate, mediate, and take remedial action." *Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198* (2d Cir. 1985). The Second Circuit recognizes an instance in which claims not alleged in the EEOC charge are "reasonably related" to a plaintiff's Title VII claims. It is as follows:

> *Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall with the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.*

Here, the plaintiff submitted enough documents at the Hawaii EEOC Office to support his age, gender, and national origin discrimination claims and to put the employer on notice.

The **continuing violation doctrine** "reliev[es] a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of

CIVIL COMPLAINT - 23

related acts, one or more of which falls within the limitations period." *Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998)* (quoting *Messer v. Meno, 130 F.3d 130, 134–35 (5th Cir. 1997))*. The plaintiff must "show an **organized scheme** leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 352 (5th Cir. 2001)*. We have also found equitable tolling excused an untimely filing "in <u>rare</u> and <u>exceptional circumstances</u> when a plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Lovett v. Barbour Intern., Inc., 211 F. App'x 281, 283 (5th Cir. 2006)*.

An employee may file a lawsuit "not only upon the specific complaints made by the employee's initial EEOC charge but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." Fellows v. Universal Rests., Inc., 701 F.2d 447, 451 (5th Cir. 1983). "'<u>[A] charging party's rights should [not] be cut off merely because [s]he fails to articulate correctly the legal conclusion emanating from his factual allegations</u>.'" Simmons–Myers v. Caesars Entm't Corp., 515 F. App'x 269, 272 (5th Cir. 2013) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462 (5th Cir. 1970)). We must determine whether the EEOC charge "stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges". Id. at *2 (citing Manning v. Chevron Chem. Co., 332 F.3d 874, 878 (5th Cir. 2003); Sanchez, 431 F.2d at 462)).

Here, the local EEOC office in American Samoa falls under the purview of the Hawaii EEOC Office. On August 4, 2021, the plaintiff sent an email entitled "Need to File a Charge" to Raymond Griffin and Emily Mauga at the Hawaii EEOC Office. (**See Exhibit 1**) The plaintiff's

CIVIL COMPLAINT - 24

email states that he was filing a discrimination claim against the defendant ASG for terminating his employment because he had complained to former Governor Lolo in 2020 that his supervisor Michael White reduced his salary without notice. The plaintiff stated in his email a claim of retaliation discrimination based on national origin as well as age and gender discrimination. On August 5, 2021, the plaintiff sent another email to the Hawaii EEOC Office, this time a lengthy email entitled "EEOC Application" to Emily Mauga at the Hawaii EEOC Office. (**SEE Exhibit 3**) In the email, the plaintiff explained that "Besides the off-island White attorneys, he was the only other staff with a college education and pertinent education and training" to match his salary." The plaintiff also elaborated that his salary was comparable to his education and work experience background much like his White coworkers. Further, the plaintiff gave specific details of the adverse actions he suffered including age and gender discrimination as well as being threatened by his supervisor Michael White to transfer. Moreover, the plaintiff included a list of people to contact for more information and attached the following: (1) Pre-Charge Inquiry Application; and (2) a copy of his Email entitled "concerns" sent to Michael White. (**See Exhibits 4**)

On August 5, 2021, the plaintiff sent another email addressed to Hawaii EEOC Director "Raymond Griffin" and "Emily Mauga" entitled "more documents" which includes the following: (1) May 5, 2021 letter to the DHR Director challenging the right to appeal; (2) May 6, 2021 letter to DHR and Personnel Advisor Board addressing the violation of Title VII of the Civil Rights Act; (3) Employment misconduct by Michael White; (4) List of evidence of discrimination; (5) Adverse Actions by Michael White and; (6) Another letter to DHR Director dated May 5, 2021. (**See Exhibit 5**) A few weeks later, the plaintiff received a phone call from "Emily Mauga." Initially, the plaintiff thought it was a prank call as he could hear noises in the

background of people talking and laughing as well as the sounds of moving vehicles on a

highway. The exchange seemed very "unprofessional" in that the plaintiff had to ask if she was

at work or home and she said she was at work. The plaintiff also thought it strange that "Emily"

was quick to reject all of his discrimination claims as well as the retaliation claim. She was very

dismissive and unclear with her explanations. Moreover, the plaintiff was confused and

frustrated with how "Emily" explained the discrimination law. The plaintiff was frustrated

because he felt he had submitted enough information and yet "Emily" was quick to conclude

dismissing all claims. This led to the plaintiff requesting to speak to a different interviewer or a

lawyer but "Emily" insisted she stayed on. The plaintiff recalls asking Emily if she was related to

Governor Lemanu because she shares the same last name. She said "no" and that her "Mauga"

last name originates from Western Samoa. Overall, the plaintiff thought "Emily" sounded

peculiar and suspected she was connected to the people implicated in the suit.

On August 31, 2021, at 4:29 PM after the EEOC phone interview with "Emily," the

plaintiff sent an email entitled "Retaliation" to both Emily and Director Raymond Griffin sharing

information on retaliation from the EEOC website. (**See Exhibit 6**) On August 31, 2021, at 5:16

PM, the plaintiff sent another email to "Emily" and "Mr. Griffin," this time the plaintiff used

facts of his case as an example of retaliation, even though he had already sent enough

information to Emily affirming his claims. (**See Exhibit 7**) On August 31, 2021, at 8:57 PM, the

plaintiff sent another email to "Emily" and "Mr. Griffin" entitled "violation of substantive and

procedure due process" and attached his "Amended Complaint" filed with the Office of the

Administrative Law Judge in hopes that it would give more insight of the case. (**See Exhibit 8**)

On August 31, 2021, at 10:35 PM, the plaintiff sent another email entitled "race and age

discrimination." (**See Exhibit 9**) In this email, the plaintiff wrote, "*My supervisor is White and*

CIVIL COMPLAINT - 26

*believes a Samoa person such as myself shouldn't question his authority regardless if it's right or wrong and should not get paid a high salary regardless if he has the education background. Michael White has said that Samoans get admitted into Harvard because of affirmative action. He also said that I was old*." On August 31, 2021, at 10:49 PM, the plaintiff sent his last email to "Emily" and "Mr. Ramond Griffin" entitled "EEOC." (**See Exhibit 10**) In this email, the plaintiff writes, "*Emily has attempted to deny all of the claims of race, age, and gender and now she trying to deny the retaliation claim. I strongly oppose her making these decisions on her own because these decisions require legal analysis. She is not a lawyer. I also feel that she is related to people implicated in the case like the Governor. Emily said she was filing a dismissal*." On September 1, 2021, the plaintiff finally received an email from Mr. Raymond Griffin. (**See Exhibit 11**) In his email, Griffin attempted to apologize for Emily's behavior and affirmed the EEOC's plan to dismiss all claims. At this point, the plaintiff felt that he had done everything required of him and was exhausted from the exchange with the Hawaii EEOC office. The Hawaii EEOC pretty much lulled the plaintiff into inaction.

C.  Hawaii EEOC failed to inform the plaintiff of his Right to Sue

In all of the phone conversations and email correspondences with "Emily" and "Raymond Griffin" of the Hawaii EEOC Office, neither Emily nor Raymond had ever mentioned to the plaintiff that he had a "Right to Sue" the defendant ASG in federal court, even after receiving a dismissal of claims letter from the EEOC. When Emily informed the plaintiff on August 31, 2021, that she was prepared to file a dismissal of all claims, the plaintiff felt that there was nothing else he could do. This is evidenced in the plaintiff sending five emails to Emily and Raymond Griffin following his phone interview on August 31, 2021, desperately pleading not to file a dismissal of all his claims. The Hawaii EEOC's affirmative misconduct led the plaintiff to

believe that there was nothing else he could do at that point.

It wasn't until recently, that the plaintiff discovered that he had a "Right to Sue" the defendant and that he could "Request for a Notice to Sue" letter from the EEOC to proceed with the filing at the District Court even while the EEOC is conducting their investigation or after receiving a dismissal of claims letter. The plaintiff was completely unaware of this right. Had he known about this, the plaintiff would have filed a timely suit with the District Court in Hawaii since he had already filed his "wrongful termination" and "due process violation" claims on May 14, 2021, at the Office of the Administrative Law Judge in American Samoa. However, the plaintiff operated under the impression that he had to wait until the EEOC's investigation was completed and then permitted to file suit.

D.  EEOC Hawaii's Negligence

"Emily's" and "Raymond Griffin's" failure to inform the plaintiff of his "Right to Sue" has resulted in the "untimely filing" of his claims with the District Court. On August 5, 2021, the plaintiff submitted his timely "Pre-Charge Inquiry" with the Hawaii EEOC Office under case number 486-2021-00434. On September 1, 2021, at 4:34 PM the Hawaii EEOC office emailed a copy of the "Charge Form" for the plaintiff to fill and sign. As alluded to earlier, at this point, the plaintiff felt that there was no sense in submitting the form because "Emily" had already told him the day prior that she was prepared to file a "dismissal" on all claims. Emily had never mentioned to the plaintiff that he could still pursue his claims in federal court, even after receiving a "Notice of Dismissal." Even in Mr. Griffin's email sent earlier on September 1, 2021, at 8:26 AM, he reiterated the EEOC office was moving forward with the filing of dismissal on all claims. At no time during the plaintiff's correspondence with Emily and Mr. Griffin of the Hawaii EEOC, the plaintiff was informed he had a "Right to Sue" the defendant in court even

CIVIL COMPLAINT - 28

pending investigation or receiving a dismissal of claims letter. As mentioned earlier, the plaintiff sent a total of 5 emails to "Emily" and "Raymond" after the EEOC phone interview on August 31, 2021, in an attempt to convince both not to file a dismissal. Yet, there was no response from either. This was the opportune time for "Emily" and "Mr. Raymond Griffin" to inform the plaintiff of his "Right to Sue" the defendant in federal court and yet they failed to do so. As evidenced by the frequency of his emails and the language used, the plaintiff felt that there was no other option available to pursue his claims.

E.  Plaintiff's Timely File Pre-Charge Inquiry Constitutes a Charge

Under the anti-discriminatory scheme enacted by Congress in Title VII of the Civil Rights Act of 1964, as amended, the filing of a "charge" is utilized to initiate the administrative processes assigned to the EEOC in that Act and to determine whether the claim is timely made. It also circumscribes the aggrieved party's claim. The term "charge" is not defined in the Act itself, nor the regulations adopted by the EEOC but, given its general meaning in the context of Title VII, it may be defined as an accusation of unlawful discriminatory acts. *In EEOC v. Commercial Office* Products *Co., 486 U.S. 107, 108 S. Ct. 1666, 100 L. Ed. 2d 96 (1988),* the Supreme Court summarized the procedures and time limitations for filing discrimination claims under Title VII with the EEOC:

*As a general rule, a complainant must file a discrimination charge* with *the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. § 706(e), 42 U.S.C. § 2000e-5(e). If a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days. Ibid.*

The plaintiff was never asked by "Emily" nor "Mr. Griffin" of the Hawaii EEOC if he had instituted proceedings with the local EEOC American Samoa Office. In Emily's response to the plaintiff's submission of his amended pre-charge inquiry form, she mentioned the plaintiff had exceeded the 180 statute of limitations claims. The plaintiff essentially articulated the same allegations he submitted on August 5, 2021, in his amended "Pre-Charge Inquiry", only this time the plaintiff had asked for a Notice of Right to sue in federal court.

**[A] charge** is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify the allegation made therein. Such amendments and amendments alleging additional acts that constitute unlawful employment practices related to or growing out of the original charge will relate back to the date the charge was first received....29 C.F.R. § 1601.12(b).

For EEOC purposes, Alefosio's Intake Questionnaire sent to the Hawaii EEOC Office on August 5, 2021, contained enough information to satisfy 29 C.F.R. § 1601.12(b): it named the defendant ASG as the offending party and alleged that the plaintiff's employment termination was based on retaliation discrimination for participating in a "protected activity" when he complained to Governor Lolo in 2020 when his former supervisor unfavorably altered his salary due to his national origin. It also alleges discrimination for altering salary based on national origin as well as discrimination based on gender and age. It also complies with the general definition of the term "charge." In addition to the pre-charge inquiry application, Alefosio submitted enough information and evidence to the Hawaii EEOC Office to start the machinery of the administrative process rolling and to put the defendant ASG on notice. **As to the**

CIVIL COMPLAINT - 30

requirements of a signature and verification, the regulations allow for a subsequent amendment that relates back to the original submission. **29 C.F.R. § 1601.12(b**). The **relating-back regulation** has been upheld by every circuit which has considered it. *See Peterson v. City of Wichita, Kan.,* 888 F.2d 1307, 1308-09 (10th Cir.1989) (reversing the district court which followed the *Proffit* reasoning). To hold that an Intake Questionnaire which identifies the party to be charged, as well as the aggrieved party, and specifies the alleged discriminatory practices does not satisfy the Title VII charge-filing requirement after it is properly amended would place form over substance and fail to adhere to the Supreme Court's admonition that statutes under which untutored laymen must initiate a statutory process should not be given a technical reading.

In Emily's response email on May 21, 2024, to the plaintiff's amended pre-charge inquiry she said "Submitting an inquiry is not filing a charge." (**See Exhibit 12**) **The Supreme Court has held that a technical reading of statutes used to interpret procedures under which laymen initiate a statutory process is inappropriate.** *See Zipes v. Trans World Airlines,* 455 U.S. 385, 397, 102 S. Ct. 1127, 1134, 71 L.Ed.2d *1251 234 (1982) (citing *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S. Ct. 616, 619, 30 L. Ed. 2d 679 (1972)). **Equally important is the Supreme Court's statement that the EEOC's interpretation of Title VII is to be given deference if the interpretation is reasonable**. *See EEOC vs. Commercial Office Products,* 486 U.S. at 115, 108 S. Ct. at 1671 (1988). In *Casavantes v. California State University, Sacramento,* 732 F.2d 1441 (9th Cir. 1984), and *Price v. Southwestern Bell Telephone Co.,* 687 F.2d 74 (5th Cir.1982), the court held that the submission of an Intake Questionnaire can be equated with a formal charge. In *Casavantes,* the plaintiff submitted an Intake Questionnaire on day 248 after receiving notice of termination from his job. The Intake

Questionnaire was neither signed (the form had no signature block) nor verified. The EEOC sent Casavantes a formal charge document on day 313 which he signed and mailed back on day 316. *Casavantes,* 732 F.2d at 1441-42. <u>The District Court dismissed the suit as time-barred</u>. *Id.* The Ninth Circuit held that the Intake Questionnaire was sufficient to constitute a charge and that the lack of signature and verification was cured by amendment. *Id.* at 1443.

In *Price,* the Fifth Circuit held that **an unsigned, unverified Intake Questionnaire was not "necessarily legally insufficient" to constitute a charge**. *Price,* 687 F.2d at 78-79. In *Peterson v. City of Wichita, Kan.,* 888 F.2d 1307 (10th Cir.1989), *cert. denied,* ___ U.S. ___, 110 S. Ct. 2173, 109 L. Ed. 2d 502 (1990), **the Tenth Circuit held that a written, unverified complaint (not an Intake Questionnaire) submitted within the 300-day time limit was sufficient to constitute a charge when cured by a later amendment.** 888 F.2d at 1309. **The court stated that the amendment provision, 29 C.F.R. § 1601.12(b) (1988),** which allows an amended charge to relate back to the date the charge was first received, did not prejudice the employer because the EEOC "does not proceed to investigate a charge until it is verified." *Id.* The Sixth Circuit, in *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir.1969), **<u>allowed charges to be verified almost six months after they were filed even though a 90-day limitation period on filing charges was in effect. 418 F.2d at 357.</u>**

To allow States and localities to combat discrimination free from premature federal intervention, the Act provides that no charge may be filed with the EEOC until 60 days have elapsed from the initial filing of the charge with an authorized state or local agency unless the agency's proceedings "have been earlier terminated." § 706(c), 42 U.S.C. § 2000e-5(c). The EEOC's referral of a charge initially filed with the EEOC to the appropriate state or local agency properly institutes the agency's proceedings within the meaning of the Act, and the EEOC may

CIVIL COMPLAINT - 32

hold the charge in "`suspended animation'" during the agency's 60-day period of exclusive jurisdiction. *Love v. Pullman Co., 404 U.S. 522,* 525-526 [92 S. Ct. 616, 618, 30 L. Ed. 2d 679] (1972). In light of the 60-day deferral period, a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer **the charge** to that agency, within 240 days of the alleged discriminatory event to ensure that it may be filed within the 300-day limit. See *Mohasco Corp. v. Silver, 447 U.S. 807, 814, n. 16 [100 S. Ct. 2486, 2491, n. 16, 65 L. Ed. 2d 532] (1980).* If the complainant does not file within 240 days, the charge still may be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days. See *ibid.*

The Third Circuit has found that a letter sent to the EEOC constituted a charge, for purposes of meeting the statute of limitations requirement. Rabzak v. Berks County 815 F.2d 17, 19-20 (3d Cir. 1987). The Third Circuit noted that "the charge-filing provisions are to be liberally construed." Id. at 20.

It is rather peculiar the Hawaii EEOC had never asked Alefosio if he had approached the local EEOC Office in American Samoa. The plaintiff suspects the local EEOC Office in American Samoa colluded with "Emily Mauga" at the Hawaii EEOC Office to deny the plaintiff's claims. From the start, Emily was very dismissive, abrasive, and vague, and her explanation of the discrimination law was confusing. Even after the plaintiff had requested a replacement, "Emily Mauga" insisted she stayed on. On May 13, 2024, the plaintiff sent an amended "Pre-Charge Inquiry" of his complaint filed on August 5, 2021, under case number 486-2021-00434 to "Emily." (See **Exhibit 13**) The plaintiff essentially reiterated the same facts as he did when he initially filed his discrimination claims on August 5, 2021. On May 14, 2024, the plaintiff followed with another email to "Emily" of the Hawaii EEOC Office requesting a "Notice of Right to Sue." (See **Exhibit 14**) On May 21, 2024, the plaintiff received a response

CIVIL COMPLAINT - 33

from Emily that <u>the 180-day statute of limitations had run out and therefore the plaintiff could not date his</u> claim <u>back to 2021</u>. She instead opened a new case number 486-2024-00394 and for the first time, she informed the plaintiff of his right to file a complaint once the signed charge form was received by the EEOC office. Emily used the term "complaint" instead of "lawsuit" which can be easily misconstrued. She also listed the defendant ASG as having only 100 employees even after the plaintiff corrected her. She further elaborated that the plaintiff would receive a notice of dismissal. The regulation states that " [a] charge may be amended...." 29 C.F.R. § 1626.8(c) (1997). **On May 29, 2024, the plaintiff received a "Notice of Right to Sue" and "Dismissal of** Charge**" from "Emily" via email. The plaintiff has 90 days to file a lawsuit**.

    F.  Equitable consideration should toll the time limitation period for filing a charge with the EEOC.

The Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in Federal Court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* <u>455 U.S. 385</u>*, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982).* **Equitable tolling** is appropriate in cases of active deception such as where a claimant has been "`**lulled into inaction by her past employer, state or federal agencies, or the courts**.'" *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984). It is also **appropriate in cases where** a claimant is "`**actively misled**'" or **has been prevented from asserting his or her rights in an extraordinary way**. *Id.* (citing *Wilkerson v. Siegfried Insurance Agency, Inc.,* 683 F.2d 344, 348 (10th Cir.1982)). *See also Miller v. Marsh,* 766 F.2d 490 (11th Cir.1985); *Fox v. Eaton Corp.,* 689 F.2d 91, 93 (6th Cir. 1982).

CIVIL COMPLAINT - 34

Here, the plaintiff was actively misled by his former employer ASG starting when Michael White unfavorably altered Alefosio' salary. The DHR withheld the recommendation letter and concealed it for over two years. The reason the DHR withheld the letter was because it was a recommendation to "transfer" and not to "terminate" the plaintiff's employment. The letter also contained false and misleading allegations by Michael White. Title VII actions are subject to equitable tolling when the defendant intentionally concealed the facts giving rise to the lawsuit. *Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999)). On August 11, 2021, the defendant filed an Affidavit provided by the Director of Human Resources, Lynn Pulou Alaimalo, in opposition to the plaintiff's motion for summary judgment. The Affidavit of Lynn Pulou Alaimalo did not contain a recommendation letter by Michael White to terminate employment. The defendant also filed a fraudulent Affidavit of Michael White on August 18, 2021, in opposition to the plaintiff's Motion for Summary Judgment.

The Office of the Administrative Law Judge also basically lulled the plaintiff into inaction. In 2021, Governor Lemanu gave the Administrative Law Judge a $50,000.00 pay increase. Perhaps this was the reason the ALJ attempted to cover the defendant's corruption scheme. In his Writ of Mandamus filed with the Trial Division and Interlocutory Appeal filed with the Appellate Court in American Samoa, the plaintiff argued that defendant ASG colluded with the Administrative Law Judge to deny the plaintiff his entitlement to backpay and employment benefits. The plaintiff argued that it was an organized scheme. It was deliberate and calculated.

The organized scheme started when the plaintiff approached former Governor Lolo in 2020. Then Michael Michael White retaliated by subjecting the plaintiff to numerous adverse actions. On April 28, 2021, Michael White secretly invited his secretary Folole to the alleged

CIVIL COMPLAINT - 35

"budget meeting" supposedly with Governor Lemanu. Thereafter the DHR concealed the recommendation letter Michael White had submitted on April 8, 2021, and misled the plaintiff about the content of the letter. In turn, the ALJ covered the defendant's misdeed by hiding the plaintiff's "property" and "liberty" interest rights to continued employment argument in the footnote of her March 2022 Administrative Ruling on the plaintiff's Motion for Summary Judgment. Furthermore, the ALJ misled the plaintiff to focus on a bogus legal issue that she and the defendant orchestrated would be the outcome. It took the ALJ approximately 8 months to render her decision on the plaintiff's Motion for Summary Judgement. The ALJ knew the plaintiff had attempted to contact the EEOC Office about his discrimination claims. The proceedings were delayed just enough to terminate the statute of limitations for the plaintiff to file his discrimination claims. For nearly 2 years, the plaintiff focused his attention on arguing against the "unsatisfactory performance" reason for termination, meanwhile, the DHR had in their possession the recommendation letter to "transfer" not to "terminate" Alefosio's employment.

Moreover, Title VII actions are subject to equitable tolling when the EEOC misleads the plaintiff about his rights. *Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999)). The Hawaii EEOC made the following errors: (**1**) failed to determine that Alefosio's Intake Questionnaire timely filed on August 5, 2021, contained enough information to satisfy 29 C.F.R. § 1601.12(b) to trigger an EEOC investigation and put the defendant on notice; (**2**) failed to inquire whether the plaintiff's had commenced filing his discrimination claims with the local American Samoa EEOC Office under § 706(c) of Title VII, 86 Stat. 104, 42 U.S.C. § 2000e-5(c) and to refer the matter to the local American Samoa EEOC to preserve the 300-day limit (**3**) failed to inform the plaintiff of the different time limitations to file a claim; and perhaps the most critical of all, (**4**)

failed to notify the plaintiff of his Right to Request for a Notice of Right to Sue.  **Equitable estoppel** tolls the statute of limitations where an employee's untimely filing is the result of a deliberate design by the employer and the plaintiff's actual and reasonable reliance on the employer's misconduct.  *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 94 (1965). To prove estoppel successfully, the plaintiff must show that the defendant's conduct was improper and that the plaintiff was harmed by such misconduct. *Id.*

It would be inequitable under such circumstances and would frustrate the remedial purpose of the Civil Rights Act, to apply the decision of this court to bar the claim of a party who filed suit within the period recommended by the administrative body which had been established to help vindicate such statutory rights. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306 (1975).

**The purpose of the provision under dispute was "to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or the Attorney General does not act with due diligence and speed.**" 118 Cong.Rec. 7168 (1972) ("section-by-section analysis" accompanying conference report on H.R. 1746). **Its purpose was not to serve as a camouflaged hurdle over which the unsuspecting layman might trip**. **Congress could hardly have intended that the individual's right to redress the "paramount" concern of Title VII be effectively nullified by the fact that the EEOC's procedures are arguably inconsistent with the letter of the statute.** To the contrary, in retaining the private right of action, Congress "intended to make clear that an individual aggrieved by a violation of Title VII should not be forced to abandon the claim merely because of a decision by the Commission or the Attorney General . . .." *Id.*

In an analogous context, involving the construing of the period allowed for the filing of charges **Congress wished that "wide latitude should be given individuals in such cases to**

CIVIL COMPLAINT - 37

avoid any prejudice to their rights as a result of government inadvertence, delay or error." *Love v. Pullman Co., 404 U.S. 522,* 527, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). Under **this Congressional concern, courts have generally declined to dismiss Title VII complaints for failure to comply with the letter of the** statute **when the complainant attempted to fully comply but was misled by EEOC procedures.** *Id. at 295; See also Bull v. Holmes,* 403 F. Supp. 475 (E.D.Va.1975); *Bormann v. Long Island Press Publishing Co.,* 379 F. Supp. 951 (E.D.N.Y.1974); *Sheffield v. Northrop Worldwide Aircraft Services, Inc.,* 373 F. Supp. 937 (M.D.Ala.1974).

**Title VII is rife with procedural requirements that are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen.** Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. **Prior decisions, both the Supreme Court and this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today.** *Egelston v. State Univ.,* 535 F.2d 752, 754, 755 (2d Cir. 1976) (citations omitted).

**The statute requires that "the Commission, or the Attorney General . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought . . .." 42 U.S.C. § 2000e-5(f) (1).** As the Fifth Circuit has stated: "**We must ever be mindful that the provisions of Title VII** were **not designed for the sophisticated or the cognoscenti** . . .." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 463 (5th Cir. 1970). **It is a statutory scheme designed for layman participation.** *Love v. Pullman Co., 404 U.S. 522,* 527, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972).

In *Gates,* the EEOC **neglected to advise the complainant of her right to sue when it**

**informed her that her case was being closed for lack of jurisdiction.** *Gates v. Georgia-Pacific Corp.,* 492 F.2d 292 (1974). <u>The court held that her time limit for filing a complaint was tolled by the Commission's error because she "acted with all of the diligence and promptness which could be expected."</u> *Id.* at 295. **While <u>notice of the right to sue</u> is not specifically mentioned in the statute, the Supreme Court has referred to it as a statutory prerequisite to bringing suit.** *Alexander v. Gardner-Denver Co.,* <u>415 U.S. 36</u>, 47, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974).

Here, what the Hawaii EEOC did was not what Congress had in mind when it created the Title VII Civil Rights Act. Congress wished that "wide latitude should be given individuals in such cases to avoid any prejudice to their rights as a result of government inadvertence, delay or error. Alefosio attempted to fully comply but was misled by EEOC procedures. The Hawaii EEOC made it seem like a camouflaged hurdle for the plaintiff to file his discrimination claims. It was inconsistent with the letter of the statute. As alluded to earlier, Congress "intended to make clear that an individual aggrieved by a violation of Title VII should not be forced to abandon the claim merely because of a decision by the Commission or the Attorney General" and that's exactly what the Hawaii EEOC did. The Hawaii EEOC's affirmative misconduct of failure to inform the plaintiff of his Right to Sue forced the plaintiff to abandon his claim.

G. Extraordinary Circumstances

The tolling power must be exercised in extraordinary circumstances. *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988). This matter is nothing short of extraordinary circumstances. The plaintiff has been actively misled by the defendant for approximately three years. The defendant's entire case is based on lies and deception. This matter would have ended sooner if the defendant hadn't concealed the recommendation letter to terminate employment for

two years which was a recommendation to "transfer" and NOT "terminate" the plaintiff's employment. In the earlier stages of litigation at the Office of the Administrative Law Judge, the ALJ committed an egregious act by hiding the plaintiff's "property" and "liberty" interest rights in continuing employment in the footnote of her ruling. The plaintiff's property interest right in continuing employment entitles the plaintiff to back wages and restoration of employment benefits. The defendant ASG essentially colluded with the ALJ to deny the plaintiff his right to back pay and restoration of employment rights.

The plaintiff strongly feels that the local American Samoa EEOC Office colluded with "Emily Mauga" of the Hawaii EEOC Office to deny every attempt by the plaintiff to file his claims. This is evidenced by her being dismissive from the very start. Emily also purposely failed to inform the plaintiff of his Right to Sue in federal court even if the claims were dismissed or pending EEOC investigation. She had plenty of opportunities to inform the plaintiff of his Right to Sue but she failed to do so.

Consequently, considering the magnitude of impropriety committed by the plaintiff's Supervisor Michael White, DHR, ALJ, and the Hawaii EEOC Office, this Court must toll the statute of limitations.

<u>VIII. CONCLUSION</u>

The plaintiff's email sent to the Hawaii EEOC on August 4, 2021, followed by subsequent emails which included the pre-inquiry charge forms and additional documents constituted a charge, for purposes of meeting the statute of limitations requirement. The defendant violated provisions of Title VII of the Civil Rights Act for discriminating against the plaintiff for engaging in a protected activity when he complained to former Governor Lolo in 2020. The plaintiff mentioned to Governor Lolo that his former supervisor Michale White

CIVIL COMPLAINT - 40

unfavorably altered his salary without notice. The plaintiff felt it was unfair because he deserved his salary due to his educational and work experience background much like his White coworkers' salaries were comparable to their education and work experience.  The defendant violated Title VI of the Civil Rights Act by terminating the plaintiff's employment in retaliation for complaining to former Governor Lolo which is a protected activity. The defendant also violated Title VII by discriminating against the plaintiff based on his national origin Samoan when Michael White reduced the plaintiff's salary despite his comparable education and work experience background. The defendant also violated the ADEA for discriminating against the plaintiff based on his age of 43 in favor of younger female workers. The defendant also violated the FSLS by terminating the plaintiff's employment in retaliation for complaining to Governor Lolo about an employment violation.

### IX. RELIEF SOUGHT

WHEREFORE, Plaintiff prayerfully requests this Court, under Title 42 U.S.C. § 2000e- 5(a)-5(f)(3), and to the Court's equitable powers to:

(1) Enter judgment against Defendant and in favor of Plaintiff for each violation alleged in this complaint;

(2) Enter judgment awarding the plaintiff relief for the following:

    a. Compensatory Damages

        Under *42 U.S.C. § 1981a(b)(3)*, depending on the size of the employer, the amount of combined punitive and compensatory damages is capped under Title VII at various levels, including (1) $50,000 for employers with 15-100 employees, (2) $100,000 for employers with 101-200 employees, (3) $200,000 for employers with 201-500 employees, and (4) $300,000 for employers with 501 or more employees.

CIVIL COMPLAINT - 41

The defendant, ASG, employs over 5000 employees. The case severely damaged the plaintiff's marriage and family. Shortly after the plaintiff's employment was wrongfully terminated, his wife left with their youngest son to the mainland for two years without discussing it with the plaintiff. She couldn't bear the pain of not having income to provide for their children. The plaintiff was left alone to care for his other two sons and also struggled to look for a job for almost a year. The plaintiff had just taken out a loan for a car and was struggling to provide for his sons and make payments. The marriage hasn't been the same since the separation. The plaintiff also has a delinquent status on his credit report for failure to make on-time payments toward the car loan. This predicament has caused the plaintiff embarrassment, depression, and stress. Thus, the petitioner is asking for combined punitive and compensatory damages under this provision of $300,000.00.

b. Economic Damages

According to *42 U.S.C. § 2000e-5(g)(1)*, if a court finds that a respondent (such as an employer) is intentionally engaging or intentionally engaged in an unlawful employment practice alleged in a lawsuit, it may award the complainant (such as an employee) back pay. However, the amount awarded should not accrue more than 12 months before a complaint is filed with the Equal Employment Opportunity Commission (EEOC).

It is also crucial to note that under the same provision, reasonable diligence is applied in determining if the back pay awarded should be reduced by the amount that could have been earned by the victim of discrimination during the relevant period or by the amount of earnings for the victim during the relevant time.

Additionally, as ruled in one case (See *Williams v. Pharmacia, Inc.,137 F.3d 944, 952 (7th Cir. 1998)*), front pay may also be awarded by a court instead of reinstatement. However, under *42 U.S.C. § 2000e-5(g)(2)(A)*, if the complainant or plaintiff was discharged or suspended or denied advancement or employment for any reason other than discrimination based on grounds prohibited by Title VII, then the complainant or plaintiff may not be awarded back pay.

In addition, in *Howe v. City of Akron, 801 F.3d 718, 745 (6th Cir. 2015)*, the court ruled that back pay may also be awarded by a court in a disparate impact case. Based on this ruling, back pay should be calculated from the first time the employer engages in the alleged discriminatory practice.

Here, as alluded to in the facts, there is no doubt the defendant engaged in unlawful practice. According to *42 U.S.C. § 2000e-5(g)(1, the plaintiff is owed back pay estimated at $35,000.00 and employment benefits of $7,000.00.*

   c.  Punitive damages

Under *42 U.S.C. § 1981a(a)(1), (b)(1), (b)(3)*, the count of employees an employer has (which should determine if Title VII applies to the employer) is used as the basis for capping the amount of punitive damages available under Title VII, in addition to certain compensatory damages. Notably, according to *42 U.S.C. § 1981a(a)(1), (b)*, if a court finds that an employer acted with reckless indifference or malice to the rights of a prevailing plaintiff, then it may allow the plaintiff/complainant to recover punitive damages.

The defendant ASG acted with reckless indifference or malice to the rights of the plaintiff. What the defendant did was egregious and without any remorse. It was

premeditated and unprecedented. It involves several individual defendants conspiring against the plaintiff. As stated earlier, under *42 U.S.C. § 1981a(b)(3)*, the plaintiff is asking for $150,000.00 in punitive damages to punish the defendant for their egregious acts and for subjecting the plaintiff and his family to almost four years of stress, depression, duress, etc.

d.  Equitable Relief

According to *42 U.S.C. § 2000e-5(g)(1)*, a court may (1) order any affirmative action as may be appropriate and (2) require the respondent to refrain, cease, and desist from conducting the alleged unlawful employment practice if it finds that the respondent is intentionally taking part in or intentionally took part in, an unlawful employment practice alleged in the lawsuit. Examples of affirmative actions a court may order include, but are not limited to, hiring or reinstating employees (present or absent of back pay or any other relief it may deem just, equitable, and appropriate. In addition, as ruled in *Young v. UPS, 135 S. Ct. 1338, 1365 (2015)*, equitable relief may also be awarded by courts in disparate impact cases.

Moreover, under *42 U.S.C. § 2000e-5(g)(2)(A)*, if an individual (in the capacity of an employee) was suspended or denied advancement or employment for any reason other than in violation of *42 U.S.C. § 2000e-3(a)* or discrimination based on national origin, sex, religion, color, or race, a court may order the promotion, reinstatement, or hiring of the individual.

As alluded to earlier, the plaintiff seeks a Court Order to reinstate his employment benefits and to have on record his transfer to the American Samoa Community College where he now works as a Language and Literature Instructor. Further, seeks a

CIVIL COMPLAINT - 44

Court Order to refrain, cease, and desist the defendant from conducting the alleged unlawful employment practice. Plaintiff also seeks an Order requiring the ASG's Department of Human Resources to update its Policy and Administration Manual and to ensure all ASG departments have a copy to follow its procedures make sure all employees have access to it, and enforce its disciplinary actions. The plaintiff also seeks an Order requiring the local ASG EEOC Office to follow up on all employment termination and to offer assistance and make their Office noticeable and accessible and perhaps a more "neutral" local office with an isolated location from the main Executive Building. And an Order to provide an easily accessible, confidential, and supportive process and to offer a listing of local attorneys offering pro-bono or paid for by the government for those unable to afford an attorney to help with filing a complaint.  The local Legal Aid office does not offer much support, let alone help.

e.  Miscellaneous

All other expenses incurred over three years of litigation (i.e. printing costs, vehicle gas, wear and tear on the vehicle, time spent away from family to focus on the case, etc). The plaintiff is asking $15,000.00.

f.   This brings the total to $357,000.00 of monies owed to the plaintiff for damages and rights to restoration of back pay and employment benefits.

g.   Award Plaintiff such additional relief as the Court may deem just and proper.

<u>VII.  CERTIFICATION AND CLOSING</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

CIVIL COMPLAINT - 45

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: __June 26,__, 20__24__.

_____
ProSe Plaintiff, Mr. Leauma Ben Alefosio

CIVIL COMPLAINT - 46